# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDITH E. THOMPSON, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | 02: 10-CV-1488 |
| ) | |
| UPMC PRESBYTERIAN SHADYSIDE, ) | |
|     Defendant. ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

Presently before the Court for disposition is the MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendant, UPMC Presbyterian Shadyside (*Document Nos. 29 and 32,* respectively), the brief in opposition filed by Plaintiff (*Document No. 38*), and the REPLY BRIEF filed by Defendant (*Document No. 42*).

The issues have been fully briefed and the factual record has also been thoroughly developed via DEFENDANT'S APPENDIX IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (*Document No. 31*), DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACT (*Document No. 30*), the APPENDIX TO PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (*Document No. 39*), and PLAINTIFF'S COUNTERSTATEMENT OF FACTS (*Document No. 37*).

After a careful consideration of Defendant's motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that there are genuine issues of material fact which remain surrounding the issue of whether Plaintiff's race was a motivating factor and/or that Plaintiff's age was a

1

determinative factor in the decision by UPMC Presbyterian Shadyside ("Presby/Shadyside") to terminate Plaintiff's employment. Accordingly, the Motion for Summary Judgment will be denied.

## Procedural Background

Plaintiff, Edith E. Thompson ("Plaintiff"), initiated this lawsuit on November 5, 2010, by filing a four-count Complaint against her former employer, Presby/Shadyside. Plaintiff alleges that her employment was unlawfully terminated because of her gender, race and age. The Court has been advised that Plaintiff has withdrawn her gender claim. *See* Def's Brief at 3, n.2. Therefore, the Court addresses only the remaining claims of alleged unlawful termination in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§623(a)(1), *et. seq.* and the Pennsylvania Human Relations Act ("PHRA"), §951, *et. seq.*

Defendant has filed the instant motion for summary judgment in which it contends that it is entitled to judgment as a matter of law because Plaintiff is unable to establish a *prima facie* case on her Title VII and ADEA claims. In the alternative, Defendant argues that Plaintiff's employment was terminated for legitimate, nondiscriminatory reasons, namely "because in her role as a supervisor, she instructed subordinates to retroactively backfill and sign-off on log entries on Contrast Warmer Logsheets and Emergency Drug Check Sheets, thereby falsifying these documents, compromising patient care, and threatening the hospital's accreditation." Def's Br. at 2. Defendant further argues that there is no evidence that the reason for her termination is a pretext for unlawful discrimination because "the stated reason for termination – complete loss

of trust in a supervisor who directed subordinates to falsify logs – is, in fact, the true reason Thompson's employment with the hospital came to an end." Def's Br. at 3.

**Factual Background**

As the law requires, all disputed facts and inferences are to be resolved most favorable to Plaintiff, the non-moving party

Presby/Shadyside is the flagship hospital of the UMPC health system and serves as the centralized hub for a wide array of advanced tertiary and community care services which operates on two campuses located approximately two miles apart – known respectively as the "Oakland Campus" or "Presby Western Psych" ("Presby") and the "Shadyside Campus" ("Shadyside").

An independent, not-for-profit organization, the Joint Commission on Accreditation of Healthcare Organizations ("Joint Commission") accredits and certifies more than 19,000 health care organizations and programs in the United States, and that accreditation and certification is recognized nationwide as a symbol of quality that reflects an organization's commitment to meeting certain performance standards. If falsified information or documentation is discovered during an audit, it can jeopardize Joint Commission accreditation. In 2009, falsified documentation or information may have resulted in preliminary denial of accreditation, which would subject Presby/ Shadyside to monitoring for a one-year probationary period during which time the hospital would be required to take corrective action. If the falsification is determined to be serious enough, it can result in final denial of Joint Commission accreditation, which would jeopardize all existing Presby/Shadyside contracts that require a Joint Commission accreditation.

Presby/Shadyside obtains its Center for Medicare and Medicaid Services certification by and through the Joint Commission's accreditation. To maintain the Joint Commission's accreditation, Presby/Shadyside must undergo on-site inspections by a Joint Commission survey team at least every three years. The Joint Commission does not announce or schedule specific inspection dates.

Plaintiff is an African American woman, who was 60 years old at the time her employment was terminated. Plaintiff worked at UPMC Presby from 2000-2001, then at Magee Women's Hospital from 2006-2007, after which she returned to Presby in 2007 and worked there as a computed tomography or "CT" scanning supervisor until 2008. In 2008, Plaintiff transferred and began working as a CT scanning supervisor at Shadyside where she remained until her termination in April 2009.

While working as a CT scanning supervisor, Plaintiff reported to Lydia Kleinschnitz, director of imaging/radiology ("Kleinschnitz"), who in turn reported to Charles Davis, program administrator of imaging ("Davis"). Plaintiff supervised approximately fifteen (15) CT Technologists (or "Techs") at Shadyside, including Allison Stitt ("Stitt") and Cassandra Falkenstein ("Falkenstein"), and she had responsibility for ensuring Joint Commission compliance in her area and for ensuring that her subordinates complied with standards established by the Joint Commission.

Staff in the Shadyside CT department performed CT scans on patients, some of which are conducted with the aid of a contrast agent, which is an intravenously administered dye

4

solution that makes structures and organs easier to see. While undergoing CT scans, some patients experience discomfort when the contrast agent is injected.

Some rooms in the Shadyside CT department contain an emergency drug box, which houses the drugs that are used to counteract contrast reactions and complications. The drug box is locked with a plastic tie and is tagged with a serial number and an expiration date of the medications in the box. The CT department staff is responsible for checking the emergency drug box and related emergency equipment each day to ensure that the department is prepared to administer the necessary treatment in the event a patient were to have a contrast reaction.

The department keeps an Emergency Drug Check Sheet that is to be updated every day by a staff member who checks the emergency drug box and related emergency equipment. The staff member who completes the log must check the drug box to verify that it is locked and that the expiration date for the medications in the drug box has not passed, and then record the tag serial number and expiration date on the log. Additionally, the staff member completing the log must also check to ensure that the other emergency equipment is in the room and ready for use.

On March 25, 2009, in anticipation of a Joint Commission audit, Davis and Kleinschnitz performed a mock Joint Commission audit of the Shadyside scanning area. During this mock inspection, they discovered that there were missing entries on the March 2009 Emergency Drug Box and Contrast Warmer logs. Davis and Kleinschnitz emphasized to Plaintiff and the other staff members in the department that the checks must be done and the logs must be filled out on a daily basis from there on out.

Shortly after Davis and Kleinschnitz left the CT department, Plaintiff instructed CT Techs, Stitt and Falkenstein, to backfill log entries for days that had been missed in March on the Contrast Warmer Logsheets.

Four days later, on March 29, 2009, Kleinschnitz again inspected the radiology areas in Shadyside, and observed that the previously discovered blank log entries had been filled in with information and reflected initials of staff members. When asked, Plaintiff told Kleinschnitz that she had directed her staff to retroactively complete the blank log entries. Kleinschnitz advised Plaintiff that this was a problem and that Kleinschnitz needed to discuss the situation with representatives of the Accreditation and Regulatory Compliance and Human Resources departments.

Kleinschnitz then notified Linda Conroy, Director of Accreditation and Regulatory Compliance; Kathy Grills, Human Resources Manager; and Charles Davis, her direct supervisor, that information had been backfilled on the logs in the Shadyside CT department and that Plaintiff had directed her staff to backfill the logs. Thereafter, Plaintiff, Stitt, and Falkenstein were each requested to provide written statements of what had occurred and each confirmed that Plaintiff had instructed Stitt and Falkenstein to backfill the logs. Kathy Grills explained the situation to Louis Goodman, Vice-President of Human Resources, and provided him with the employee statements.

Plaintiff's employment was terminated on April 14, 2009. She alleges that two younger white females, Michelle Petit and Lois Miller, were hired to replace her. Plaintiff also contends that

6

backfilling logs, such as the Contrast Warmer Logsheets and Emergency Drug Check Sheets, was a common practice within Presby/Shadyside.

## Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating the evidence at the summary judgment stage, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Matreale v. New Jersey Dept. of Military & Veterans Affairs*, 487 F.3d 150, 152 (3d Cir. 2007). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.,* 996 F. 2d 632 (3d Cir. 1993).

With respect to summary judgment in discrimination cases, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.,* 829 F.2d 437, 440 (3d Cir. 1987).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

**Discussion**

The Court notes at the outset that while Plaintiff alleges the same acts of discrimination under three statutes (Title VII, ADEA, and the PHRA), the analysis for the purpose of summary judgment under the three is the same. *See Lewis v. University of Pittsburgh,* 725 F.2d 910 (3d Cir. 1983), *cert. denied*, 469 U.S. 892 (1984).[1]

Where, as here, no direct evidence of discrimination is being presented and only circumstantial evidence exists, the analyses of the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny provide the formulation for allocating the requisite burdens of proof and production. To prove a discrimination claim under the burden-shifting analysis set forth in *McDonnell Douglas*, first, the plaintiff must establish a *prima facie* case of discrimination. 411 U.S. at 802. If the plaintiff succeeds, the burden of production then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the unfavorable employment decision. *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). The burden then shifts back to the plaintiff to show by a preponderance of the evidence that the nondiscriminatory reasons

---

[1] Pennsylvania courts generally interpret the PHRA in accordance with its federal counterparts. *Kelly v. Drexel Univ.*, 94 F.3d 102, 104 (3d Cir. 1996). Because the analysis of race and age discrimination claims under the PHRA is largely coterminous with the analysis of such discrimination claims under Title VII and the ADEA, the claims will be analyzed together.

8

articulated by the defendant were merely a pretext for discrimination. *McDonnell Douglas.*, 411 U.S. at 805.

Moreover, the United States Supreme Court has recently found that "the ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Gross v. FBL Financial Services*, 557 U.S. 167 (2009). Thus, in order to demonstrate pretext under *Fuentes*, it is incumbent upon the plaintiff in an ADEA case to demonstrate that age was a determinative factor or "the 'but-for' cause of the employer's adverse decision;" it is not sufficient to simply show that age was "a motivating factor." *Gross*, 557 U.S. at 176. *See also Smith v. City of Allentown,* 589 F.3d 684, 691 (3d Cir. 2009) (holding that "the but-for causation standard required by *Gross* does not conflict with our continued application of the *McDonnell Douglas* paradigm in age discrimination cases.").

A. **Prima Facie Case**

1. **Title VII Claim / Race Discrimination**

In order to establish a *prima facie* case of racial discrimination, a plaintiff must establish that (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) that circumstances of the adverse employment action give rise to an inference of discrimination. This inference may be reached when a person not of the protected class fills the position. *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403 at 410-11 (3d Cir. 1999).

9

The parties do not dispute that Plaintiff can establish the first three elements of her *prima facie* case. However, Defendant contends that Plaintiff fails to meet the fourth element because there is no evidence that a "similarly situated person outside of Thompson's protected class[] was treated more favorably." (Def. Br. at 2.) The Court disagrees.

When viewing the evidence in the light most favorable to the non-moving party, Plaintiff can establish that she was replaced first by Michelle Petit and later by Lois Miller, both of whom are Caucasian. Consequently, the Court finds that Plaintiff has met her burden of establishing a *prima facie* case of race discrimination, and the burden then shifts to Defendant to provide a legitimate, non-discriminatory reason for Plaintiff's termination.

### 2. **ADEA Claim / Age Discrimination**

In order to establish a *prima facie* case of age discrimination, a plaintiff must demonstrate (1) that plaintiff is forty years of age or older; (2) that plaintiff suffered an adverse employment action; (3) that she was qualified to hold the position; and (4) that plaintiff was ultimately replaced by another employee sufficiently younger to support an inference of discriminatory animus. *Smith*, 589 F.3d at 690.

Again, the parties do not dispute that Plaintiff can establish the first three elements of her *prima facie* case. Defendant contends though that Plaintiff fails to meet the fourth element because there is no evidence of any "similarly situated" person outside of Plaintiff's protected age class who was treated more favorably than Plaintiff. Def's Br. at 2. However, under the ADEA, a plaintiff need only show that she was replaced with <u>someone sufficiently, or substantially younger than her</u> and that person does not need to be outside the protected class.

*O'Connor v. Consolidated Coin Caters Corp.*, 517 U.S. 308, 313 (1996). A unanimous Court in *O'Connor* held that "the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas prima facie* case." 517 U.S. at 312. The Court explained:

> The discrimination prohibited by the ADEA is discrimination "because of [an] individual's age," 29 U.S.C. § 623(a)(1), though the prohibition is "limited to individuals who are at least 40 years of age," § 631(a). This language does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 or older. The fact that one person in the protected class has lost out to another person in the protected class is thus irrelevant, so long as he has lost out because of his age. Or to put the point more concretely, there can be no greater inference of age discrimination (as opposed to "40 or over" discrimination) when a 40 year-old is replaced by a 39 year-old than when a 56 year-old is replaced by a 40 year-old.

*Id.*

The Court of Appeals for the Third Circuit has declined to establish bright-line rules for determining what constitutes a sufficiently younger person and in fact has stated "there is no magical formula to measure a particular age gap and determining if it is sufficiently wide to give rise to an inference of discrimination." *Barber v. CSX Distribution Services*, 68 F.3d 694, 699 (3d Cir. 1995). "Different courts have held, for instance, that a five year difference can be sufficient, but that a one year difference cannot." *Sempier v. Johnson & Higgins,* 45 F.3d 724, 731 (3d Cir. 1995). *See also Showalter v. University of Pittsburgh Medical Center*, 190 F.3d 231, 236 (3d Cir. 2005) (holding that an eight year age differential was sufficient to satisfy the fourth element of a *prima facie* case).

The summary judgment record evidence reflects that Plaintiff was replaced by Lois Miller, who is eleven (11) years younger than Plaintiff, and Michelle Petit, who is fourteen (14)

11

years younger than Plaintiff. Establishing a *prima facie* case it not intended to be an onerous burden on a plaintiff. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Therefore, allowing Plaintiff all reasonable inferences, the Court finds that Plaintiff has met her burden of establishing a *prima facie* case by adducing evidence that individuals approximately eleven (11) years and fourteen (14) years younger than her were hired to replace her.

Consequently, the burden now shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action.

### B.     Legitimate, Non-Discriminatory Reason

As discussed *supra*, once Plaintiff has established a *prima facie* case of employment discrimination, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's termination. *McDonnell Douglas*, 411 U.S. at 802.

Here, Defendant has provided such a reason - namely that Plaintiff instructed her staff to retroactively complete the Emergency Drug Check Sheets and Contrast Warmer Logsheets, which is considered to be a falsification of records. The Court finds that Defendant has met its "relatively light" burden by "introducing evidence, which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision." *Fuentes*, 32 F.3d at 763.

### C.     Pretext

Because Defendant has stated a legitimate, non-discriminatory reason for its termination decision, Plaintiff, in order to survive summary judgment on both claims,

> must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate

12

>   reasons; or (2) believe that an invidious discriminatory reason was more likely
>   that not a motivating or determinative cause of the employer's action.

*Id.* at 764. In other words, a reasonable factfinder must be able to find that defendant's proffered reasons lack credence; the plaintiff must show not merely that the employer's proffered reason was wrong, but that it was "so plainly wrong that it cannot have been the employer's real reason." *Atkinson*, 460 F.3d at 454 (quoting *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108-09 (3d Cir. 1997)).

It appears as though the crux of Plaintiff's pretext argument is that there are numerous inconsistencies and contradictions in the summary judgment record evidence which create genuine issues of material fact, such as (i) the decision makers offered inconsistent testimony about the reasons for the decision to terminate Plaintiff; and (ii) falsification of logs was a common practice and similarly situated comparators, who allegedly engaged in the exact same conduct as Plaintiff, but who were Caucasian and younger, were not terminated. The Court will address these arguments seriatim.

First, Plaintiff steadfastly denies that she was ever directed to not backfill the logs. However, the Notice of Termination indicates that Plaintiff was terminated because she allegedly defied her immediate supervisor's direct order to not backfill the logs; yet, Kleinschnitz denied that Plaintiff's alleged disobedience of a direct order played any role in her termination. Grills agreed and testified that disobeying a direct order by the Plaintiff did not play any role in the decision to terminate Plaintiff's employment. (Grills Dep. 29:13, Doc. No. 39-6). On the other hand, Davis provided conflicting testimony on this issue. First, he testified that he did not know whether it had been determined that Plaintiff had in fact disobeyed a direct order. Then, he

13

testified that disobeying a direct order did play a part in the decision to terminate her employment. He further stated that the only time a staff person would be disciplined for log entry error was when he or she was obstinate and did not do what they were directed to do. (Davis Dep. 120:24, 122:17, Doc. No. 39-3).

Next, Defendant contends that Goodman had the authority to make the decision to terminate Plaintiff. However, Davis testified that it was the responsibility of Kleinschnitz to decide a proper discipline. Kleinschnitz testified that she decided that Plaintiff should receive a written warning, not termination, and that her decision never changed. Davis also testified that Kleinschnitz felt that a lesser discipline, other than termination, was appropriate for the Plaintiff. (Davis Dep. Ex. 2).

Goodman admitted in his deposition that he did not know how the recommendation to terminate Plaintiff's employment was made. However, Grills testified that Kleinschnitz changed her mind and agreed that Plaintiff should be terminated. Goodman testified that there was a disagreement between Kleinschnitz and Grills about the proper punishment for Plaintiff, even though Grills testified that both parties had agreed upon termination as the proper discipline.

Finally, Plaintiff has adduced evidence of similarly-situated comparators, who allegedly engaged in the exact same conduct as Plaintiff, but were Caucasian and younger, and who were not terminated.[2] Interestingly, Plaintiff contends that after the logs in her department were discovered to have been back dated, Davis directed that the improperly backfilled logs be

---

[2] The summary judgment record reflects that the comparators are all Caucasian; the record reflects that both Kleinschnitz and Davis are over the age of 40, but the record does not reflect the ages of the other two comparators.

14

hidden so that the Joint Commission investigators would not find the logs. Then, Cindy Matthews, an employee working for the director of Presby/Shadyside's Regulatory and Risk Management department, told Kleinschnitz to make a second alteration to the logs by using white out and exchanging copies of the logs for the originals. And a third alteration of the logs was ordered by Conroy, the supervisor of Ms. Matthews, when she directed that the original logs with backfills be restored to the logbook. None of these people received any discipline for their alleged roles in the falsification of the documents.

Davis also testified in his deposition that he had the same issue of log falsification with a technologist at Presbyterian and in that matter, the supervisor involved received only a verbal warning, the lowest form of discipline.

Furthermore, Plaintiff contends that Kleinschnitz, at approximately the same time that Plaintiff was ordering her employees to backfill certain logs, had instructed an employee in her department, Ms. Cumi Houser, to back fill a log in the patient holding area. According to Plaintiff, Kleinschnitz engaged in the exact same conduct which led to Plaintiff's termination, yet she received no discipline.

While admittedly a close call, the Court finds that Plaintiff has offered numerous examples of inconsistencies and contradictions in Defendant's proffered reason for Plaintiff's termination. For that reason, the Court finds that a reasonable jury could conclude that Plaintiff was discriminated against on the basis of her race and/or age. Accordingly, the Defendant's Motion for Summary Judgment will be denied.

**Conclusion**

For the reasons outlined above, the Court finds that genuine issues of material fact exist and Defendant's motion for summary judgment will be denied.

An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDITH E. THOMPSON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 10-CV-1488 |
| | ) | |
| UPMC PRESBYTERIAN SHADYSIDE | ) | |
|     Defendant. | ) | |

## ORDER OF COURT

**AND NOW**, this 8th day of August, 2012, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that the Motion for Summary Judgment filed by Defendant is **DENIED**.

It is further **ORDERED** that the parties shall file Pretrial Narrative Statements on or before August 29, 2012 and either party may file a Supplemental Pretrial Narrative Statement on or before September 12, 2012. A Pretrial Conference is scheduled before the undersigned on Monday, September 17, 2012 at 1:30 P.M.

                                                    BY THE COURT:

                                                    s/ Terrence F. McVerry
                                                    United States District Court Judge

cc:     Joel S. Sansone, Esquire
        Scanlon & Sansone
        Email: joelsansone03@msn.com

        Kelly Scanlon Graham
        Scanlon & Sansone
        Email: ksgraham5@verizon.net

        Eric A. Todd
        Ogletree, Deakins, Nash, Smoak, & Stewart, P.C.
        Email: eric.todd@ogletreedeakins.com

        James F. Glunt
        Ogletree, Deakins, Nash, Smoak, & Stewart, P.C.
        Email: jay.glunt@ogletreedeakins.com

        April T. Dugan
        Ogletree, Deakins, Nash, Smoak, & Stewart, P.C.
        Email: april.dugan@ogletreedeakins.com

        Philip K. Kontul
        Ogletree, Deakins, Nash, Smoak, & Stewart, P.C.
        Email: Philip.kontul@ODNSS.com